## THE STATE OF KANSAS v. JAMES M. EVANS.

1. OFFENSE *Including Lower Degree; Instruction.* In a prosecution for an offense which includes others of a less degree, and there is even slight testimony which tends to show that the offense committed was lower in degree than the one specifically charged, it is the duty of the court to define such lower degree, and instruct the jury upon the law applicable thereto.

2. TESTIMONY *Warrants Instructions.* The testimony in this prosecution examined, and found to warrant the instructions that were given.

### Appeal from Neosho District Court.

INFORMATION, charging that *James M. Evans* did, on or about the 4th day of August, 1886, in the county of Neosho, in the state of Kansas, on purpose and with malice aforethought, shoot at Scott V. Irwin with a loaded pistol, with intent to maim, kill and murder said Irwin. From a convic-

32 — 36 KAS.

tion and sentence, the defendant appeals. The opinion states the facts.

*G. W. McClelland,* for appellant.

*J. L. Denison,* county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The information in substance charged that James M. Evans, in Neosho county, on purpose and with malice aforethought, did shoot at Scott V. Irwin with a loaded pistol, with the felonious intent to maim, kill and murder said Irwin. A trial was had on November 16, 1886, and the jury returned a verdict that the defendant was—

"Guilty of endangering the life of Scott V. Irwin by the act of him, the said defendant, under circumstances which would have constituted manslaughter in the fourth degree if the death of said Irwin had ensued from the act of said defendant."

Upon this verdict, the court sentenced the defendant to confinement in the penitentiary at hard labor for a term of two years; from which conviction and sentence he appeals.

He complains of the charge of the court. The court, in its instructions, told the jury that the information not only charged an assault with intent to kill and murder, but that other offenses, of a lower grade, were included therein, which were defined; and among other directions the court advised the jury, that they might—

"Consider the evidence for the purpose of determining whether or not the life of said Irwin was endangered by the act, procurement and culpable negligence of the defendant, or whether, if death had ensued from the alleged act of said defendant toward said Irwin, it would have constituted manslaughter in the fourth degree."

The appellant contends that there was no testimony of culpable negligence upon which to found such an instruction, nor to prove any offense of a lower degree than the one specifically charged in the information. The shooting at the time

and place charged is admitted. The testimony for the state tends strongly to show that the appellant was actuated by malice, and shot at Irwin with the intent to kill him. The appellant was riding along the highway, and passed a field in which Irwin, the complaining witness, was plowing. Irwin testifies that appellant stopped his horse when opposite to Irwin and only ninety yards distant, and with a threatening expression drew and discharged a revolver. The witness further says: "I heard the whistling of the ball, and felt the full concussion of it in my face and in my hat-brim." Robert Irwin, a brother of the complaining witness, was present when the shooting occurred, and about twenty feet from his brother, and he says that he saw appellant ride up and stop upon the road opposite where they were at work in the field; heard him address an offensive remark to Scott V. Irwin, and then saw him draw a revolver and aim and shoot at Scott V. Irwin; and this witness states that the bullet from the revolver came so close to them that he heard it whistle; and the appellant then started his horse off on the gallop. Evans was a witness in his own behalf, and his testimony differed materially from that offered by the state. He admitted firing off the revolver, but says he did not aim or shoot at Irwin. Instead of shooting at Irwin, he says that he fired into the ground when he was about one hundred yards away from Irwin, for the purpose of stirring up the horse he was riding. We think this testimony is sufficient to authorize the court in advising the jury with reference to some of the lower grades of the offense charged, and in giving the instruction complained of. As was said in *The State v. Mize,* ante, p. 188; same case, 13 Pac. Rep. 1: "Where there is even slight evidence that the offense committed may have been of a lower degree than the one charged, it is the duty of the court to give the law of such inferior offenses." (1 Bish. Cr. Proc., § 980.) The witnesses for the prosecution say that Evans aimed at Irwin, while Evans says that he aimed at the ground; but it appears that the bullet passed very close to Irwin, and the jury seem to have believed the statement of appellant that he did not aim at Irwin, nor

shoot with the intent to kill him. But they seem to have credited the testimony of the state with respect to the location of the parties, the manner in which the revolver was held by Evans when it was discharged, and the proximity and force with which the bullet passed Irwin. Pursuing this theory, the testimony all taken together affords a basis for the result reached by the jury, that Irwin's life was endangered by the culpable act of Evans. Although the testimony was close upon some of the points in the case, we regard it as sufficient to support the verdict.

The judgment of the district court will be affirmed.

All the Justices concurring.